APP ET AL. *v.* CLASS ET AL.

[No. 28,367.   Filed November 24, 1947.]

*Kivett, Chambers, Vernon & Kivett*, of Indianapolis, for appellants.

*Rappaport, Kipp & Lieber*, of Indianapolis, for appellees.

O'MALLEY, C. J.—The appellees commenced an action against the appellants to recover a discount because of a claimed prepayment of part of the purchase price of certain real estate. By agreement the appellees paid in full the amount demanded by the appellants, but reserved the right to litigate the question of their right to a discount under the terms of the written contract.

The issues were raised by an answer in terms of a special denial; an affirmative answer which was stricken on motion of the appellees; a cross complaint requesting

reformation of the contract; and an answer to the cross-complaint.

There was a special finding of facts and conclusions of law which were as follows: (omitting finding number one which is the contract)

"2. That pursuant to the terms of said agreement, plaintiffs on the 11th day of March, 1938, conveyed to the defendants, their farm consisting of 98.20 acres, more or less, described in said written agreement, and that the agreed net value of said farm, less the amount of the mortgage thereon, was five thousand two hundred and fifty-five ($5,255.00) dollars.

"3. That plaintiffs, to receive a conveyance from the defendant of their farm consisting of two hundred and thirty-five (235) acres, more or less, fully described in said written agreement, were required to pay the defendants twenty-five hundred ($2500.00) dollars on or before three years from the date of said written agreement and the balance of the purchase price on or before five years from the date of said written agreement.

"4. That under the terms of said written agreement, defendants had the right to mortgage said real estate pending the conveyance of the same, and that plaintiffs had the right to assume such mortgage as a part of the purchase price.

"5. That pursuant to the terms of said written agreement, the plaintiffs, on the 28th day of February, 1941, paid the defendants twenty-five hundred ($2500.00) dollars, due on or before three years from the date of the agreement.

"6. That the plaintiffs naid the defendants the balance of the purchase price of said defendants' farm, to-wit:—Twelve thousand three hundred forty five ($12,345.00) dollars on the 28th day of February, 1941, which amount was due and payable on or before five years from the date of said written agreement.

"7. That said payment of twelve thousand three hundred forty-five ($12,345.00) dollars was made by paying the defendants two thousand twenty-

five dollars and twelve cents ($2025.12) by paying the unpaid balance of the mortgage in the amount of nine thousands six hundred ninety-one dollars and eighty-eight cents ($9,691.88), and by receiving credit in the amount of six hundred twenty-eight (628.00) dollars previously paid defendants by the Indiana State Highway Commission under condemnation proceedings.

"8. That on said 28th day of February, 1941, the plaintiffs claimed they were entitled under the terms of said written agreement, to a discount of five (5) per cent per year for two years on said twelve thousand three hundred forty-five ($12,-345.00) dollars, and that the defendants disputed the right of the plaintiffs to such discount, and that thereupon the plaintiffs and defendants agreed that if plaintiff would pay the full amount of twelve thousand three hundred forty-five ($12,345.00) dollars, the respective rights of the parties could be subsequently judicially determined in the same manner as if said payment had not been made or accepted.

"9. That subsequently, the plaintiffs made formal demand upon the defendants to pay said discount, to which they claimed they were entitled, and that payment was refused by the defendants.

"10. That plaintiffs paid to the defendants the sum of one thousand ($1,000) dollars per year, due prior to February 28th, 1941, designated as rent in said written agreement, and which actually represented taxes, insurance premiums and interest at five (5) per cent per annum on the unpaid balance of the purchase price of defendants' farm, the last of such payments being in the amount of four hundred fifty-two dollars and ninety-one cents ($452.91).

"11. That on or about February 28th, 1941, the defendant conveyed to the plaintiffs their farm which was the subject of said written agreement of March 11th, 1938.

"And as conclusions of law upon the facts, the Court states:

"1. That the law is with the plaintiffs.

"2. That the plaintiffs recover from the defendants the sum of Twelve hundred thirty-four dollars and fifty cents ($1234.50) with interest thereon at the rate of six per cent (6%) per annum from the 28th day of February, 1941, totaling three hundred ninety-five dollars ($395.00) and the costs of this action.

"3. That defendants take nothing on their cross-complaint."

In number ten of the above finding, the court stated as a fact that the rent of $1000 per year, which was provided under the terms of the contract, actually represented taxes, insurance and interest. That indicated that the court construed that item according to the evidence offered on the cross complaint, but that change in interpretation does not essentially alter the effect of the contract as a whole.

The appellants have abandoned all claim of any right to reformation by omitting all reference thereto in the propositions, points, authorities and argument. There was no finding on any issue raised by the cross complaint, and the failure of the court to find thereon must be considered as a finding against the appellants who had the burden of proof on the issues so raised. *Wolverton* v. *Wolverton* (1904), 163 Ind. 26, 32, 71 N. E. 123, 125.

The striking out of the affirmative answer and the failure to find on the issues raised in the cross complaint having been abandoned, there remains only the construction of the contract.

The first proposition and points thereunder are addressed to the conclusions of law and that treatment assumes that the facts are well found. It is true that in the points, above referred to, it is asserted that the contract, which is finding number one, forces the conclusion that there were no pre-

payments. In finding number six the court stated that the due date was five years from the date of the contract, which is in conformity with the plain terms thereof. To follow the appellants' claim would force an interpretation in conflict with that finding and the plain terms of the contract.

The particular section of the contract which caused this litigation is as follows:

"The purchase price of said tract, if the option is exercised, shall be and is $20,100.00 to be paid as follows:—$5,255.00 by the equity in the real estate to be conveyed by the party of the second part to the party of the first part, and the balance of $14,845.00 as follows, $2500.00 thereof on or before three years from this date; the balance in full on or before five years from this date. In the event that payments shall be made before the due date fixed herein, in the final settlement a discount at the rate of 5 per cent per annum for the prepayments made shall be allowed for said prepayments. Also, in the final settlement a deduction on the $2500.00 paid shall be made to cover interest from the time of said payment until the final settlement at the rate of 5 per cent per annum."

It has been claimed that the above section does not provide for a discount on prepayments. It provides for a due date which is five years from the date of the contract and also provides for a discount on payments made prior to the due date. There is no ambiguity and it matters little whether the contract is called an option to purchase or a contract to sell or to trade. In any event the parties had the right to provide for discounts if they so desired and intended. The lower court refused to reform the contract to fit the claims of appellants. In order to get the intent of the parties we can look to the instrument only, in the absence of ambiguity. *Hamilton* v. *Meiks* (1936), 210

Ind. 610, 616, 4 N. E. (2d) 536, 538, 539. We have held that rules of construction are resorted to only when the intention of the parties cannot be ascertained from the language of the instrument itself. *Hamilton v. Meiks, supra.* In *Haworth* v. *Hubbard* (1943), 220 Ind. 611, 614, 615, 44 N. E. (2d) 967, 968, this court said:

> "It is everywhere agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject-matter thereof, it is clear that some other meaning was intended."

If the parties did not intend a discount, the contract was not drawn in conformity with such intent. In the absence of ambiguity we are confined to the express terms of the contract as written. We cannot disregard its plain terms.

There were two trials of this cause. At the first trial, there was a stipulation of facts which by its terms did not foreclose the right of either party to introduce evidence on any matter contained therein. On the second trial, the appellants offered that stipulation in evidence and the appellees objected. The objection was sustained and the appellants claim error in this ruling of the court.

All of the evidence contained in the stipulation, excepting paragraph five thereof, was admitted in the oral testimony of the witnesses, and that evidence is not conflicting on any material matter. Paragraph five of the stipulation is not clear and when it is examined in connection with paragraph six, the meaning thereof becomes ambiguous. Paragraphs five and six of the stipulation are as follows:

> "5. That pursuant to the terms of said instrument the remainder of the consideration due from

the plaintiffs to the defendants, to-wit:—Twelve Thousand Three Hundred and Forty-five ($12,-345.00) was due and payable when they exercised their option to purchase which was to be done on or before March 1, 1943, but that plaintiffs paid the same to the defendants on February 28, 1941, when they exercised their option to purchase by paying to the defendants the sum of Two Thousand Six Hundred and Fifty-three Dollars and Twelve Cents ($2,653.12) and by paying the mortgage indebtedness of the defendants on the real estate deeded by the defendants to the plaintiffs, in the sum of Nine Thousand Six Hundred Ninety-One Dollars and Eighty-eight Cents, ($9,691.88).

"6. That on said 28th day of February, 1941, the plaintiffs claimed that they were entitled under the terms of said instrument to a discount of 5% per year on said sum of Twelve Thousand, Three Hundred Forty-five ($12,345.00) Dollars, and the defendants disputed the right of the plaintiffs to such discount and that thereupon the parties agreed that if the plaintiffs would pay the full amount of Twelve Thousand, Three Hundred and Forty-five ($12,345.00) Dollars, the respective rights of the parties could be subsequently determined judicially in the same manner as if said payments had not been made or accepted."

Paragraph five attempts to place a construction on the contract as to the due date and that is a matter for the trial court to determine from the wording thereof. In the objection by the appellees it was stated that the stipulation was made for the first trial to avoid calling witnesses, and that the appellees had withdrawn permission for its use in the second trial. It would seem that a stipulation may be made for a single trial or made generally. *Wheat* v. *Ragsdale* (1866), 27 Ind. 191; *Hays* v. *Hynds* (1867), 28 Ind. 531; *McKinney* v. *The Town of Salem* (1881), 77 Ind. 213, 215. It would seem that although a stipulation itself is not limited to a single trial, facts may be placed before the court

to show the circumstances under which it was made in order to determine whether the stipulation was for a limited or general use. In the instant case the stipulation . was not exclusive and binding because, by its terms, evidence in agreement, contradiction or explanation could have been offered. It may be that the explanation of counsel for the appellees at the time of objecting was considered by the court in determining the matter. However, facts were received in evidence which obviated the use of the stipulation with one exception to which reference is made above. That exception was to the effect that the balance of the purchase price was due at the time of the exercise of the option. Such stipulation was a conclusion of law and beyond the power of agreement by the attorneys or parties. In *Miller* v. *State, ex rel. Tuthill* (1930), 202 Ind. 18, 26, 171 N. E. 381, 384, this court said:

> "Paragraph 37 of the agreed statement of facts, which was not adopted by the court in its special finding of facts, provided that:
>
> " 'The defendants have the right in this action, on the facts herein stipulated; to question the legality of the presence of the names of the relators on said ballots as candidates for said offices and the legality of all ballots cast for any of the relators as such candidates at said election.'
>
> "This, instead of being a statement of fact is a conclusion of law, and the court did not err in failing to adopt it as a part of the special finding of facts. The appellants admit that 'conclusions of law have no place in special findings,' but contend that 'the fact that such a stipulation of rights was made and admitted in evidence does have a place in the finding of facts.' They quote from *Ex parte Walls* (1880), 73 Ind. 95, as follows:
>
> " 'If pertinent and material facts are proven, but the court does not find upon them, and thereby impliedly finds that they are not proven, the finding in such respect is clearly contrary to law.'

"The facts thus referred to are facts pertinent and material to the issues being tried, and not the mere fact that the parties had agreed between themselves that, as a matter of law, they believed one of them had the right to have a certain legal question decided."

There is no question that the parties cannot agree upon the law and force a conclusion according to their understanding or agreement.

In the case of *Pittsburgh, etc., R. Co.* v. *Muncie, etc., Traction Co.* (1910), 174 Ind. 167, 178, 179, 91 N. E. 600, 604, this court had before it a question involving a stipulation concerning the complaint, cross complaint and answer. The parties stipulated that "the facts alleged in each of said pleadings were true as therein alleged." In that case this court said:

"Under this agreement only facts properly pleaded could be considered, and all the conclusions of the pleader and mere apprehensions and fears alleged, and all mere recitals, epithets and surplusage must be disregarded."

It was also held in the above case that where there is a conflict of facts properly alleged in the pleadings the court must find against the one with the burden of proof. The court did not err in sustaining the objection to the stipulation.

The finding of facts is not questioned excepting by the claim that it is not sustained by sufficient evidence and that specification merely raises the question of the sufficiency of the evidence necessary to support the finding as made. The real question is a claimed failure to find facts on matters that had been proved but upon which no finding was made. That question should be raised by a specification in the

motion for a new trial that the decision of the court is contrary to law. Watson's Revision of Works Practice & Forms, Vol. 2, § 1599, pp. 240, 241; *Nading* v. *Elliott, Trustee* (1894), 137 Ind. 261, 267, 268, 36 N. E. 695, 697, 698.

The case of *Wolverton* v. *Wolverton, supra,* on which the appellants rely, does not support their position on the above question. In that case this court in 163 Ind. at pages 30, 31, 71 N. E. at page 125, said:

> "The next assignment is that the court erred in overruling appellant's motion for a new trial. The only reasons stated in this motion, discussed by counsel for appellant, are that 'the decision of the court is not sustained by sufficient evidence, and that the decision of the court is contrary to law.'"

The court did state that:

> ". . . the reasons stated were sufficient to raise the question of the sufficiency of the evidence to sustain the special finding of facts."

In discussing the above case the court did refer to the claimed error by reason of the failure of the court to make a finding on some matters, but the reasons stated in the motion were sufficient to question the basis upon which the finding must rest and also any failure to find on a matter which was in issue and which had been proved. The court did not separately apply each of the asserted reasons.

In the instant case, we have examined the question regardless of the fact that it was not properly raised and can see no merit in the claim of the appellants, because the evidence does not sustain their contention.

No reversible error having been shown the judgment of the lower court is affirmed.

NOTE.—Reported in 75 N. E. (2d) 543.