### CHICAGO STADIUM CORP.
v.
### STATE OF INDIANA et al.
### Civ. No. 3742.

United States District Court,
S. D. Indiana, Indianapolis Division.

Aug. 10, 1954.

Rochford & Rochford, Indianapolis, Ind., for plaintiff.

Edwin K. Steers, Atty. Gen. of Indiana, Lloyd C. Hutchinson and George B. Jeffrey, Indianapolis, Ind., for defendants.

STECKLER, Chief Judge.

This is an action sounding in tort, it being an action in replevin brought by the plaintiff against the named defendants in their representative capacity as members of the Indiana State Fair Board, including the State of Indiana, as Trustee, for the possession of certain personal property located in the coliseum building at the State Fair Grounds at Indianapolis, Indiana; and in addition thereto, the plaintiff seeks damages in the sum of $100,000 for the alleged wrongful taking and unlawful detention by the defendants of such personal property. The alleged property involved is "four high intensity spotlights with rheostats, carbons and fittings; 6,000 feet of cable in various sizes; 72 Alzah fixtures with color frames; switches, connections and miscellaneous supplies necessary for operation of same." The light fixtures have been installed and are attached to the realty.

In response to the complaint each of the defendants joined in the filing of a motion to dismiss the cause of action on the following grounds:

(1) The Court lacks jurisdiction of the subject matter because the complaint does not allege that the matter in controversy is between citizens of different states; that the matter in controversy is not one wholly between the citizens of different states in that the defendant, State of Indiana, as Trustee, and the defendant, Indiana State Fair Board, are not, nor is either of them a citizen of the State of Indiana or citizens of any state.

(2) The Court lacks jurisdiction of the subject matter because this action is in substance and effect a suit against the sovereign State of Indiana, which has not consented to be sued in this Court; that the sovereign State of Indiana was granted immunity from suit in this Court by, under and pusuant to the Eleventh Amendment to the Constitution of the United States of America and that the sovereign State of Indiana has not waived the immunity from suit in this Court granted to it by said Eleventh Amendment to the Constitution of the United States of America.

(3) That the complaint fails to state a claim upon which relief can be granted to the plaintiff.

The issues presented by the Motion to Dismiss have been exhaustively briefed, and counsel for the parties have been heard in oral arguments.

The nub of the plaintiff's argument in opposition to the Motion to Dismiss is that the Indiana State Fair Board as defined by Chapter 214, Acts of the General Assembly 1947, is a separate entity from the sovereign State of Indiana; that it engages in transactions in competition with private enterprise; that the broad grant of powers to the Board vesting in it the right to contract with reference to the maintenance and control of the State Fair Grounds, including the right to rent property, collect rents, borrow money and issue bonds, and generally to do that which is necessary in the operation of the State Fair Grounds as though it were a private enterprise, carries with it as a corollary, liability to suits at law, whether such actions be in the nature of actions ex contractu or ex delicto.

If the Indiana State Fair Board is an inseparable instrumentality or agency of the sovereign, and not a separate entity as contended by plaintiff, then the State's sovereign immunity would protect it, and the Indiana State Fair Board, against all actions at law, including the one here involved, unless the State through its legislature has clearly waived such immunity. It follows that if the Board is an inseparable instrumentality acting in its lawful capacity, the State of Indiana would then be the real party in interest in this action, entitling the defendants to the relief sought in the second paragraph of the Motion to Dismiss.

Inasmuch as the case has been brought in this Court by reason of diversity of citizenship between the parties, the Court must look to the substantive law of the State of Indiana in order

to determine whether the sovereign state is the real party in interest, and this is a question to be determined solely under the laws of Indiana as declared either by the Legislature of Indiana or by the decisions of its highest courts. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

■■ "Where relief is sought under general law from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally. Atchison, T. & S. F. R. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436; cf. Matthews v. Rodgers, 284 U.S. 521, 528, 52 S.Ct. 217, 220, 76 L.Ed. 447. Where, however, an action is authorized by statute against a state officer in his official capacity and constituting an action against the state, the Eleventh Amendment operates to bar suit except in so far as the statute waives state immunity from suit. Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140; Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121." Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 462, 65 S.Ct. 347, 350, 89 L.Ed. 389.

■ As also stated by the Supreme Court in Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, at page 464, 65 S.Ct. at page 350; "We have previously held that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. Ex parte Ayers, 123 U.S. 443, 490–499, 8 S.Ct. 164, 174, 175, 31 L.Ed. 216; Ex parte State of New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057; Worchester County Trust Co. v. Riley, 302 U.S. 292, 296–298, 58 S.Ct. 185, 186, 187, 82 L.Ed. 268. And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. Smith v. Reeves, supra; Great Northern Life Ins. Co. v. Read, supra." Also see People of Colorado ex rel. Watrous v. District Court, 10 Cir., 207 F.2d 50, 56, wherein the Court stated: "Whether a suit is one against a state is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered." Judge Parker, in a recent opinion, formulates the question to be that if the judgment is payable from public funds, then the suit is one against the state. O'Neill v. Early, 4 Cir., 208 F.2d 286.

The Indiana Legislature has been liberal in affording adequate remedies for claimants seeking redress on contract claims, but this relief has been confined to suits against the state in its own courts. See Burns' Indiana Statutes (1946 Repl.) Section 4–1501. Such actions are required to be brought in the Superior Court of Marion County with all judges thereof sitting together without a jury. And in this same connection Section 14 of Chapter 214 of the Acts of 1947 provides that actions on bonds issued by the Indiana State Fair Board must be brought in the same court with all the judges sitting without a jury. Thus it is indicated that the Legislature intended to confine authorized actions against it to actions in its own state courts.

The Court must next determine whether this is an action against the state.

■ "Suits against officers or agents personally, because, while claiming to act officially, they have committed or they threaten to commit wrong or injury to the person or property of plaintiff, either without right and authority or under color of an unconstitutional statute, are not suits against the state." 81 C.J. S., States, § 216, p. 1316. This being the general rule the Court must then determine whether this is such an action or whether it is an action against the

state arising out of an authorized and legal transaction.

It is also a general rule that "a suit, involving property in which the state has an undoubted right or interest, and in which no effective decree can be rendered without binding the state itself, is a suit against the state and cannot be maintained without its consent." 81 C.J.S., States, § 216, p. 1320.

In the oral argument before the Court it was disclosed that the defendants had entered into a lease with an Indiana corporation known as the Indianapolis Coliseum Corporation. That some of the officers and stockholders of the Indianapolis Coliseum Corporation were also officers and stockholders of the plaintiff herein, Chicago Stadium Corporation. The personal property involved in this action is alleged to have been installed or placed in the coliseum building through an arrangement between these two corporations during the period of such lease. The dispute over the ownership of such property arose between the parties to this action at the termination of said lease. Since the Act under which the Indiana State Fair Board was created authorizes it to enter into rental agreements, it is apparent then that the misunderstanding between the parties has arisen out of a normal and legitimate function on the part of the Indiana State Fair Board.

There is considerable legislative history leading up to the Acts of 1947 under which the present status of the Indiana State Fair Board and its relation to the State of Indiana is defined. By the Acts of 1947 the Indiana State Legislature recognized the past confusion existing with reference to the present Indiana State Fair Board's predecessors, particularly in regard to the control and management of the State Fair Grounds.

The Legislature through Chapter 214 of the Acts of 1947 sought to clarify the manner in which the grounds are held and the relationship of the Board to the State and to eliminate such confusion.

Section 1 of the Acts of 1947 sets forth:

"That whereas through various legislative changes the exact status of the Indiana State Fair Board, successor to the Indiana Board of Agriculture, its powers, duties and relationship to the State of Indiana have become confused.

"And, Whereas the existence of duplicate boards for the same purpose is possible under the present Indiana statutes,

"And Whereas it is deemed advisable to clarify the manner in which the Indiana State Fair Grounds are held and the duties, powers, and responsibilities of the State of Indiana and the Indiana State Fair Board with relationship thereto,

"Now, therefore, it is the purpose of this Act to permanently fix the status of the Indiana State Fair Grounds as trust property held by the State of Indiana as trustee for and on behalf of the people of the State of Indiana and the Indiana State Fair Board as the sole agency of the State of Indiana to administer said trust property for and on behalf of the State of Indiana."

There can be no question as to the fact that the State of Indiana holds the fee simple title to the property making up the State Fair Grounds, as a Trustee for and on behalf of the people of the State of Indiana, for this is clearly spelled out in the Act. It is in this regard that the plaintiff contends that the sovereign State of Indiana is not a real party in interest but that it, as a Trustee, merely holds title to the real estate and that the Legislature through the broad grant of powers to the Indiana State Fair Board has waived sovereign immunity in connection with the business transactions carried on by the Board, particularly those that partake of the nature of private enterprise.

Plaintiff's argument ignores the whole theory of trusts in so far as the real party in interest is concerned.

Section 1 of the 1947 Act, supra, provides that the Indiana State Fair Board is "the sole agency of the State of Indiana to administer said trust property for and on behalf of the State of Indiana." It is difficult for this Court to understand how the plaintiff can seriously contend that the State of Indiana through its agency, the Indiana State Fair Board, is not performing a function for the people of the State of Indiana who are sovereign. As stated in the case of Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595, 607, 46 L.R.A., N.S., 796 at page 814:

"A brief discussion of our system of government will not be amiss at this point. When it was established, the people had in their keeping the whole power of sovereignty, which was, of old, deemed to be centered in a personal head as the agency of God on earth. Their effort to form a government, to exercise that power, contemplated a new system, —one essentially different from any existing in the Old World. The courts were no longer to be the agencies of a personal sovereign, deriving authority from on high, instead of from the people, but they were to be agencies of the latter. Sovereign authority was to be regarded as in the people, exercisable by the people through their chosen agencies, and for the people."

Section 11 of Chapter 214 of the Acts of 1947 provides:

"All property acquired by the State of Indiana from the Indiana State Board of Agriculture by deed duly executed pursuant to the provisions of Chapters 77 and 122 of the Acts of the General Assembly of 1921, with any additions to such property which has been or may hereafter be acquired by the State as incident to the management of such property, shall be held by the State in trust for the uses and purposes as defined in the deed of conveyance from said Indiana State Board of Agriculture, it being the legislative intent that said property be held by the State as trustee for the interest of agriculture and allied industries as expressed in the said instrument of conveyance."

The Board in acquiring any other property cannot acquire it in the name of the Indiana State Fair Board but must acquire it in the name of the State of Indiana, as Trustee, and of course it follows therefore that the State would continue to hold the property as trustee for the people so long as the Legislature permits the Act to remain as it is now written.

Section 7, Chapter 214 of the Acts of 1947, exempts from taxation the real and personal estate administered by the Board and provides that such exemption shall exist so long as such property is held for the purpose of giving fairs or exhibitions. Also each and every attraction or entertainment, the proceeds for admissions to which are put into the treasury and become the property of the Board, shall be exempt from every tax or license charged under the laws of the State of Indiana. The bonds or other evidence of indebtedness issued pursuant to the Act shall also be exempt from taxation. Plaintiff argues that if the Legislature had not regarded the Indiana State Fair Board as a separate corporate entity it would not have enacted such exemptions for they would be utterly superfluous since the property of the State of Indiana itself is not subject to taxation. The Court does not so interpret such exemption but on the contrary, regards Section 7 of Chapter 214 of the Acts of 1947 as a recognition of the sovereignty of the State as explained in the case of Ennis v. State Highway Commission, 1952, 231 Ind. 311 at page 329, 108 N.E.2d 687. Nor does the fact that Section 12 of Chapter 214 of the Acts of 1947 authorizing the Board to issue bonds and providing the credit of the state in its sovereign capacity shall not be pledged, conflict with the sovereign character of the defendants. Ennis v. State Highway Commission, 1952, 231 Ind. 311 at pages 333–338, 108 N.E.2d

687; State of Arkansas v. State of Texas, 1953, 346 U.S. 368, 74 S.Ct. 109, 98 L.Ed. ——.

As a further aid to a determination of whether the Indiana State Fair Board is a separate entity from the sovereign State of Indiana, is the source of funds for maintenance and operation of the Fair Grounds. Section 13 of Chapter 214 of the Acts of 1947 levies a tax to aid the Indiana State Fair Board in meeting the obligations incident to its activities. This section provides that all funds under the control of the Board shall be for the purposes of the Act and shall be deemed public funds and be subject to the Depository Laws for public funds for the State of Indiana. Section 9 of the Act requires the filing of an annual report with the Governor concerning receipts and expenditures during the "state fiscal year"; also the filing of such report with the Auditor of State for examination, and provides that all books and accounts shall be subject to inspection by the State Board of Accounts. The Court agrees with the defendants that clearly all monies by which the defendants operate are therefore public funds belonging to the State of Indiana and to her people.

Most convincing to the Court that the Indiana State Fair Board is an instrumentality of the State and not a separate corporate entity is the manner in which the Board members are selected and in which the Board is composed. Section 2 of Chapter 214 of the 1947 Acts provides that the Board shall be composed of 16 members, 11 of whom shall be elected or nominated from the 11 State Fair agricultural districts, composed of specified counties and representing the entire state. In addition thereto, 5 members are appointed by the Governor, no more than 3 of whom shall be members of the same political party. Sections 3, 4. In addition to these members, as ex officio members of the Board the Act names the Governor, the Lieutenant Governor as Commissioner of Agriculture, and the Director of the Agricultural Extension Service at Purdue University, as members of the Board. It is provided by Section 2, Chapter 86 of the Acts of 1953, Burns' Indiana Statutes (1950 Repl., 1953 Supp.), § 15–219 that should a vacancy on the Board occur by death, resignation or otherwise, the Governor shall have the power to appoint a successor to serve the unexpired term of such former member. Certainly the membership of the Board is representative of all the people of the State of Indiana.

If the Legislature had intended the Indiana State Fair Board to be a separate corporate entity, The Court believes it would have made provision for the Board to bring suits at law in its own name. The Legislature failed to include such power in establishing the Board, and by the same token, it made no provision for actions ex delicto to be brought against the Board; and with but the two exceptions heretofore mentioned, it made no provision for actions arising out of contract to be brought against the Board.

The Indiana State Fair Board does not operate under a charter granted by the Legislature, and as a matter of fact, the Legislature could reorganize the Board at any time it saw fit. The Board has no vested rights in the funds with which it operates, and its organization is subject to change by the Legislature at any time.

The plaintiff relies heavily upon Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, D.C.1940, 34 F.Supp. 26 (distinguished in Fowler v. California Tollbridge Authority, 9 Cir., 1942, 128 F.2d 549; Darby v. L. G. De Felice & Son (in which the Pennsylvania Turnpike Commission was a third party defendant, U.S.D.C.E.D.Pa.1950, 94 F.Supp. 535); Guaranty Trust Co. v. West Virginia Turnpike Commission, D.C.W.Va.1952, 109 F.Supp. 286, and the case of Paup v. Drew, 1850, 10 How. 218, 51 U.S. 218, 13 L.Ed. 394. Plaintiff cites these cases in support of its position that the State, as Trustee, holding title to the property in fee simple, does not preclude the Indiana State Fair

Board from being a separate entity from the State. Further that such cases support the proposition that when an agency or instrumentality of the state engages in private enterprises it shall be regarded as a separate corporate entity even though not operating under a charter, and that such agency when so acting is amenable to suits at law and cannot claim the protection of the state's sovereign immunity. This Court will not question the validity of such cases as interpretative of the law of the states in which they stand. Suffice it to say, the Supreme Court of Indiana as recently as 1952 had this to say in respect to Indiana's own Toll Road Commission:

> "The toll road commission here created is a commission of the state created for a public purpose. Application of Oklahoma Turnpike Authority, 1950, 203 Okl. 335, 221 P.2d 795. It could not embark on an enterprise of a private character. State, ex rel. Allen v. Ferguson, 1951, 155 Ohio St. 26, 97 N.E.2d 660. Despite the fact that the commission is given the characteristics of a corporation, it is still a commission of the State of Indiana.[2] Section 36–3203, Burns 1949 Repl., 1951 Supp." Ennis v. State Highway Commission, 231 Ind. 311, 108 N.E.2d 687, 694.

By reference to footnote 2, the Court in the Ennis case, supra, quotes from Section 36–3203, Burns' 1949 Repl., 1951 Supplement: " * * * the construction, operation and maintenance of toll road projects, shall be deemed and held to be essential governmental functions of the state, but the commission shall not however be immune from liability by reason thereof." This section of the Indiana Toll Road Commission Act specifically states that the commission created by the Act is a body both corporate and politic in the State of Indiana and it makes provision for the Commission to sue and be sued, plead and be impleaded. This seems to be the general pattern of the toll road commission acts. Here then, the state has clearly waived immunity and subjected itself to suit, at least to the extent as authorized in the Toll Road Commission Act. However the courts of Indiana still have not been called upon to say whether such waiver carries with it the right to sue the Toll Road Commission in an action ex delicto.

No where in Chapter 214 of the Acts of 1947 defining the status of the Indiana State Fair Board nor in any other Act of the Indiana Legislature can be found a waiver of immunity to actions in tort.

Previously in Indiana the courts have been called upon to rule whether the predecessor of the present Indiana State Fair Board, the Indiana Board of Agriculture, could be held liable in an action in tort. In Busby v. Indiana Board of Agriculture, 1927, 85 Ind.App. 572, 154 N.E. 883, 884, the court held:

> " * * * The Indiana board of agriculture was created as an agency of the state for the purpose of managing and conducting a department of the state pursuant to section 1, article 8, of the Constitution, (section 189 Burns 1926). It is an involuntary corporation, organized, not for the purpose of profit or gain, but solely for the public benefit, and having only such limited powers as were deemed necessary for that purpose. In performing the duties required of it, appellee exercises a public function for the public good, for which it receives no private or corporate benefit. Being organized solely for a public purpose, no action lies against it for an injury received by a person on account of the negligence of its officers, unless a right of action is expressly given by statute."

Likewise, the same court in 1948 held that damages could not be recoverable from the Indiana Department of Conservation for an accident occurring at one of Indiana's state parks. Bracht v. Conservation Commission, 118 Ind.App. 77, 76 N.E.2d 848.

■ In conclusion, the Court holds that the Indiana State Fair Board is an inseparable agency and not a separate entity of the State of Indiana;

that the plaintiff's action is in reality against the sovereign State of Indiana and that the sovereign has not consented to the bringing of this action and therefore the same is barred in this Court by the Eleventh Amendment of the Constitution of the United States. The Court further holds that the transaction leading to this litigation arose out of a normal governmental function authorized and incidental to the operation and maintenance of the Indiana State Fair Grounds, and that therefore no personal liability could attach to the individual members of the Indiana State Fair Board for the commission of an alleged illegal act under color of office. Moreover, the defendants in this action have been sued in their representative capacity and not as individuals against whom a personal judgment is sought. And for the other reasons heretofore stated, the plaintiff's action sounding in tort may not be maintained against the named defendants. On these grounds the Court concludes that the defendants' Motion to Dismiss the Complaint should be and the same is hereby sustained, with costs of this action ordered taxed against the plaintiff.